Terry D. Hamblin Assistant Attorney General 3400 S.W. Van Buren Topeka, Kansas 66613
Dear Mr. Hamblin:
As the assistant attorney general assigned to the racing commission and on behalf of the executive director of the commission, you request our opinion regarding the limitations imposed by L. 1996, ch. 256, § 9 on the gaming activities of racing commission employees.
L. 1996, ch. 256, § 9 provides as follows:
 "(a) It is a class A nonperson misdemeanor for any person to have a financial interest, directly or indirectly, in any tribal gaming facility or any host facility that conducts or operates a game which can be played at a tribal gaming facility in this state and in which a progressive jackpot can be awarded while such person is executive director or an employee of the state gaming agency or during the five years immediately following termination of such person's employment as executive director or an employee of the state gaming agency.
 "(b) It is a class A nonperson misdemeanor for the executive director or any employee of the state gaming agency to knowingly:
 "(1) Place a wager or bet or play an electronic game of chance at a tribal gaming facility in Kansas; . . . ."
This statute consistently refers to employees of the "state gaming agency" as those who are subject to its prohibitions. The term state gaming agency is not defined in L. 1996, ch. 256. Section 3 of the enactment transfers the existing state gaming agency from the department of commerce, housed there previously pursuant to Executive Order No. 95-177, and attaches it to and makes it a part of the Kansas racing and gaming commission.
In delineating the functions of the racing and gaming commission, that section and all those following continue to refer to the state gaming agency as distinct from the Kansas racing and gaming commission. The commission is to approve the state gaming agency's budget, number and qualifications of employees and expenditures for expenses of dispute resolution, but all other management functions of the state gaming agency remain responsibilities of the executive director of the state gaming agency. Finally, subsection (b) of this section provides that "[n]othing in this act shall be construed as abolishing or reestablishing the state gaming agency."
These provisions indicate an intent to continue the state gaming agency as a separate entity in every respect except those specifically listed. If the state gaming agency is interpreted to be the Kansas racing and gaming commission whenever that term is used in the enactment, section 6 would have the effect of allowing the executive director of the state gaming agency to designate any employee of the racing commission as law enforcement officers, subsection 10(h)(10) amending K.S.A. 1995 Supp.12-4516 and subsection 14(i)(11) amending K.S.A. 21-4619 would be partially superfluous because previous sections already allow use of expunged records for determining qualifications for employment with the racing commission, etc. We note also that K.S.A. 1995 Supp. 74-8810, the parimutuel racing act statute that defines prohibited conduct for employees of the Kansas racing commission, while amended in two separate bills during the 1996 session, was not amended to specifically prohibit the conduct in question here. See L. 1996, ch. 262, § 3; L. 1996, ch. 229, § 126. Because section 9 is a penal statute, it must be strictly construed against the state and in favor of those sought to be subject to it. State v. Craig, 254 Kan. 575, 580 (1994). Any reasonable doubt as to its meaning must be decided in favor of anyone sought to be subject to it. State v. Donlay, 253 Kan. 132, 134 (1993).
Thus, it is our opinion that section 9 of L. 1996, ch. 256 applies only to employees of the state gaming agency and has no affect on non-state gaming agency employees of the Kansas racing commission.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm